Kathleen A. FUHRMAN, Plaintiff
and Appellant,

v.

Darrell B. FUHRMAN, Defendant
and Appellee.

Civ. No. 9317.

Supreme Court of North Dakota.

May 26, 1977.

Daniel J. Chapman, Bismarck, for plaintiff and appellant.

Richard B. Baer, Christensen, Baer & Thompson, Bismarck, for defendant and appellee.

VOGEL, Justice.

This is an appeal from a judgment in a divorce case. The district court granted a divorce to both parties on the ground of irreconcilable differences. After two hearings, at one of which a written report of a social worker containing hearsay information from third parties was received in evidence, the court ordered that the children of the parties should reside in the family home, and that the parents should alternate, month by month, in residing with them and having custody of them. (This latter order was stayed pending the outcome of the appeal. The children are in the custody of the wife.)

The wife appeals, claiming reversible error in four respects: (1) the admission into evidence, over objection, of hearsay matter in the report of the social worker; (2) in ordering the custody to be changed monthly; (3) in limiting each party to two witnesses to rebut the report of the social worker; and (4) in denying the attorneys for the parties an opportunity to make final arguments to the court. We reverse and remand because of the cumulative effect of several errors, some of which would be insufficient, standing alone, to require reversal.

I

After the district judge had heard the evidence of the parties as to grounds for divorce, he announced that a divorce would be granted. The attorney for the wife suggested a home study, and the district judge stated that he had planned to order such a study to be made before ruling on custody and child support. About three weeks after the first hearing was terminated, the district court administrator asked the office of the juvenile supervisor to "investigate the home of the children involved."

Subsequently, a report was prepared and submitted to the court. The gist of the report apparently was communicated orally to the attorneys for the parties about a week before the second hearing, but they first saw a copy of the report when the trial was resumed in court. The report showed that the investigator had interviewed three persons—the president of the church at-

tended by the parties, a psychologist, and a psychiatrist who had counseled the parties. Incidentally, the wife had been much more regular in attendance at such counseling sessions than the husband.

The report, without attributing the information to any particular person, includes such statements as, " . . . both parents want the children to side with them"; "The Fuhrmans have tried to get the congregation and President to take sides"; and "From information received, it seems Mr. Fuhrman did much of the home and child care while living at home." It also contains statements attributed to each of the three informants, and other statements which may be conclusions of the social worker or may be paraphrases of statements made by one or more of the three persons interviewed.

When the report was first offered in evidence, the attorney for the wife objected vigorously on the ground of hearsay, stating that the social worker could give her own opinion but should not be allowed to testify, or report in writing to be put in evidence, as to what she was told by others. He also objected that the original order was to investigate the home environment only, not interview other persons. The court expressed some doubt as to the admissibility of the report, but ruled that the witness would be allowed to testify as to conversations " . . . because, as I understand it, the persons concerning whom she has written here are residents of the community and are available for cross-examination, . . . "

■ The attorney for the wife again objected to the report later on, for lack of foundation and on the ground of hearsay. The objections were overruled, the report was received, and the social worker was offered "for cross-examination."

We believe that reversible error was committed in admitting the hearsay as substantive evidence, particularly when considered in connection with other errors described below.

The hearsay evidence as to the statements of other persons, not in court and not under oath, was admitted as substantive evidence. It was not offered or received solely as the basis for the opinion of the witness. See *Minot Sand & Gravel Co. v. Hjelle,* 231 N.W.2d 716, 728–729 (N.D.1975). Under the newly adopted North Dakota Rules of Evidence, the evidence is inadmissible over objection regardless of the availability of the absent declarants. See Rules 801, 802, and especially 803, N.D.R.Ev.

■ In ruling that the admission of the hearsay was error, we are fully aware of what we have come to call the "rule" of *Schuh v. Allery,* 210 N.W.2d 96 (N.D.1973), in which we held that trial judges, in nonjury cases, ordinarily should admit all evidence which is not clearly inadmissible, and that the introduction of allegedly inadmissible evidence in a nonjury case rarely will be reversible error. In *Schuh v. Allery,* 210 N.W.2d at 100, and in *Matson v. Matson,* 226 N.W.2d 659, 665 (N.D.1975), we quoted from *Builders Steel Co. v. Commissioner of Internal Revenue,* 179 F.2d 377, 379 (8th Cir. 1950), as follows:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. . . . On the other hand, a trial judge who, in the trial of a nonjury case, attempts to make strict rulings on the admissibility of evidence, can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted."

■ In the case before us we have regretfully concluded that "it affirmatively appears that the incompetent evidence in-

duced the court to make an essential finding which would not otherwise have been made." That essential finding is that the husband was a fit and proper person to have custody of the children on alternate months. In the absence of the hearsay portion of the report of the social worker, and her hearsay testimony as to her conversations with other persons, we believe the evidence would have been insufficient to authorize the award of split custody to the husband. Aside from the testimony of the husband himself, he offered no evidence of his fitness for custody, while the wife, in addition to her own testimony, offered evidence of friends of the family who were well acquainted with both parties socially, unlike the president of the church, one of the persons interviewed by the social worker. There was evidence of the husband's violent temper and assaultive behavior toward the wife but not the children. Where there also was evidence that the husband was good to the children, we believe the split custody would not have been justified if the hearsay had been excluded.[1]

We are referred to two cases which, it is asserted, allow the reports of social workers which contain hearsay to be received in evidence. These cases are *Silseth v. Levang,* 214 N.W.2d 361 (N.D.1974), and *Matson v. Matson, supra.* We believe they are not in point. In *Silseth,* the report of a social worker was received, but this court said:

"There was nothing improper in the district court's use of the investigation report . . . because both of the parties involved had agreed that such a report could be made . . . and used by the district court." 214 N.W.2d at 364.

There was no such consent in the case before us.

In *Matson,* the opinion indicates that reports were used, but does not specifically discuss their admissibility. The opinion

quotes at length from *Schuh v. Allery, supra,* to the effect that evidence not clearly inadmissible should be admitted in court cases. It does not, however, discuss the question of whether the competent evidence, excluding the hearsay, was insufficient to support the judgment or whether it affirmatively appeared that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. Thus neither of these cases answers the problem we have in the case before us. We resolve that problem by holding that the hearsay evidence was clearly inadmissible as substantive evidence, and therefore should not have been admitted, and by holding that it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

## II

■ As stated above, we find that the order for monthly alternation of custody of the children is based largely upon inadmissible evidence and therefore cannot stand. Additionally, we note that both parties agree that the order in the particular case before us is unworkable, since the parties are unable to cooperate with each other well enough to make it work. We also note that the social worker recommended against any such split custody because she anticipated that the parties would not be able to cooperate so as to make the arrangement work. Both parties suggest a remand so that the district court can work out other arrangements as to custody. We agree that different arrangements are necessary.

## III

After the report of the social worker was received in evidence, and after the social worker had been permitted to testify as to hearsay statements of other persons, which

---

1. This is not intended to indicate that the husband will not be entitled to partial or even complete custody after a further hearing upon remand. We do not prophesy what the evidence at that hearing will be. We merely rule here and now on the effect of evidence at the prior hearing.

the court had permitted because those persons were available for cross-examination, the attorney for the wife advised the court that he intended to call six witnesses and the plaintiff to rebut the hearsay testimony and report. After some discussion, the judge said that he ordinarily did not "permit rebuttal of expert witnesses in this kind of case, but I am going to permit each party to bring in two witnesses and that is all—two witnesses." The wife's attorney then called two witnesses only.

While ordinarily the court has a broad discretion in limiting the number of witnesses,[2] we believe that power was abused under the peculiar circumstances of this case. Hearsay evidence had been received on the supposition that it could be rebutted by calling the witnesses interviewed by the social worker and, presumably, other persons also. After hearsay testimony derived from three individuals was received, each party was limited to only two rebuttal witnesses. We believe the cumulative effect of this limitation and the reception of the hearsay deprived the wife of a fair opportunity to present her case and rebut the evidence of the husband.

## IV

After both parties had rested at the second hearing, the trial judge said:

"Well, I am going to dispose of argument because I have sat through this case, and I don't think there is any point in your rehashing the evidence, which I think is as clear to me as it needs to be."

The trial judge then proceeded to announce his decision on the custody and support matters.

The United States Supreme Court has held that it is reversible error, because it is a denial of the constitutional right to be represented by counsel, to deny an attorney for a party in a criminal case the opportunity to make a closing argument. *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).

As to whether there is an absolute right to final argument in civil cases, and particularly civil nonjury cases, the courts are divided. Some hold that the right is absolute and that deprivation of the right is error of constitutional dimensions; others hold that the right exists but may be dispensed with by the court where there are no factual issues or the parties waive the right or do not request argument· and others hold that the matter is discretionary with the court. Courts have held that denial under various circumstances is, or is not, prejudicial. The cases are collected in an annotation in 38 A.L.R.2d 1396, and particularly at pages 1419 and 1431–1439.

We have hot decided the question in this State.

We now hold that litigants in civil nonjury cases (and, of course, in all criminal and jury cases as well) have a right to have their attorneys make a final argument. This right may be limited as to time[3] and may be limited as to content so as to preclude improper argument,[4] but it cannot be totally denied. In civil nonjury cases, the right may be waived.[5]

In the case before us, it was not waived. No opportunity to argue, or to waive argument, was allowed.

2. There are no North Dakota cases on this point, perhaps because limitations are rarely invoked or because the power of the court to limit the number of witnesses is rarely challenged. For a discussion of the court's use of discretion in limiting the number of witnesses, see *In re Kaiman's Estate,* 13 Wis.2d 201, 108 N.W.2d 379, 383–384 (1961). For rule permitting limitation of number of expert witnesses, see Rule 16, N.D.R.Civ.P. For annotation on limitation of number of witnesses generally, see 21 A.L.R. 335.

3. See *Butler v. United States,* 317 F.2d 249, 6 A.L.R.3d 582 (8th Cir. 1963), and annotation in 6 A.L.R.3d 604.

4. *Teegarden v. Dahl,* 138 N.W.2d 668 (N.D. 1965); *Fox v. Bellon,* 136 N.W.2d 134 (N.D. 1965); *Larson v. Meyer,* 135 N.W.2d 145 (N.D. 1965); *King v. Railway Express Agency, Inc.,* 107 N.W.2d 509 (N.D.1961); *Tice v. Mandel,* 76 N.W.2d 124 (N.D.1956).

5. For recommendations in criminal trials, see *State v. Weippert,* 237 N.W.2d 1 (N.D.1975).

The court was presented with difficult questions of child custody and support as well as property division. Argument, as the United States Supreme Court said in *Herring v. New York, supra,* may in some cases leave a judge just where it found him. "But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel." 422 U.S. at 863, 95 S.Ct. at 2556, 45 L.Ed.2d at 601. And, as the same court points out in a footnote, closing argument in a bench trial may be even more important than in a jury trial, since a judge reaches his decision without the "stimulation of opposing viewpoints inherent in the collegial decision-making process of a jury." 422 U.S. at 863, 95 S.Ct. at 2556, 45 L.Ed.2d at 601, fn. 15. While the Supreme Court was speaking in the context of a criminal trial to the court, we believe the statements we have quoted are equally applicable to civil cases.

In closing, we owe it to the district judge to mention, as the appellant did in argument to our court, that the judge was under extreme pressure when this case was finally disposed of. He was ending his service on the bench and interrupted a busy schedule to sandwich in the final hearing in this case. With more opportunity for reflection he no doubt would have ruled differently in some respects. He was understandably preoccupied with matters of support and custody, rather than procedure.

Reversed and remanded for additional testimony.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.